UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Howard McDougall, a Trustee thereof, in his representative capacity,<br><br>Plaintiff,<br><br>vs.<br><br>BEVERLY LEWIS and DAVID T. LASHGARI, ESQ.,<br><br>Defendants. | No. 11 CV 4845<br><br>Judge Joan H. Lefkow |

**MEMORANDUM OPINION AND ORDER**

Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States"), through one of its trustees in his representative capacity, filed a two count complaint under § 502(a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), seeking an equitable lien and constructive trust (Count I) and a subrogation lien and constructive trust (Count II) on funds held by Beverly Lewis and her lawyer David T. Lashgari ("defendants"). Central States alleges that Lewis received a settlement payment from an automobile accident and that she failed to reimburse Central States for medical payments that it made on her behalf. Lashgari represented Lewis in the lawsuit related to her accident. Before the court is Central States's motion for a preliminary injunction under Federal Rule of Civil Procedure 65 enjoining Lewis and Lashgari from disposing of a portion the

settlement fund, specifically $180,033.46, until the claims in this case have been fully litigated. For the reasons set forth herein, Central States's motion [#27] will be granted.

## BACKGROUND

From the documents submitted,[1] the court ascertains the following facts, disputed where indicated. Central States is an ERISA regulated employee welfare benefit plan under 29 U.S.C. § 1002(1). Lewis was a "covered participant" of Central States's through her husband Michael's participation in Central States's welfare benefit plan under a collective bargaining agreement. As a covered participant, Lewis was subject to the terms, conditions and limitations upon payment of benefits, including Central States's right to full reimbursement, immediate subrogation, and first lien rights as to any recovery against a third party related to an incident giving rise to payment under the plan.

Lewis was injured in an automobile accident on October 8, 2008[2] while riding in a vehicle driven by Joseph Hanson, her son-in-law. The vehicle was owned by Hanson's employer, L.E. Schwartz & Son, Inc. ("Schwartz & Son"), and the accident allegedly occurred while Hanson was within the scope of his employment. Central States's plan covered medical

---

[1] Central States offers only limited evidence in support of its motion, including (1) the affidavit of Albert E. Nelson, the Benefit Services Director for Central States's Health and Welfare and Pension Funds (Pl.'s Mot. Prelim. Inj. Ex. A); (2) a summary of the accident-related benefits paid by Central States on Lewis's behalf (Pl.'s Mot. Prelim. Inj. Ex. A1), which Lewis disputes (Defs.' Resp. Ex. D; Lewis Aff. ¶¶ 4–5); and (3) a copy of Central States's Health and Welfare Fund Plan Document (Pl.'s Mot. Prelim. Inj. Ex. B). Defendants submitted the following evidence (1) a copy of Lewis's Bibb County, Georgia complaint naming Joseph Hanson and his employer, L.E. Schwartz & Son, Inc., as defendants (Defs.' Resp. Ex. A); (2) a copy of Hanson and L.E. Schwartz & Son, Inc.'s motion for summary judgment (Defs.' Resp. Ex. B); (3) a voluntary dismissal notice for the Bibb County, Georgia action (Defs.' Resp. Ex. C); and (4) allegations in the affidavit of Beverly Lewis (Defs.' Resp. Ex. D). The facts are taken from these documents and not from the complaint, which is unverified.

[2] Nelson's affidavit states that the date of the accident was October 8, 2009, but documents submitted by defendants indicate otherwise. (*See* Lewis Aff. ¶ 5; Defs.' Resp. Ex. A ¶ 7.)

expenses for Lewis as Michael's dependent, resulting in payment of $108,003.46 from October 8, 2008 through April 5, 2011 on Lewis's behalf. A year after the accident, Lewis and her husband, by their lawyer, David T. Lashgari, filed a lawsuit in Bibb County, Georgia, Civil Action No. 73321, against Hanson and his employer, Schwartz & Son, to recover damages related to the accident. (Defs.' Resp. Ex. A.)

The complaint alleged several counts of negligence against Hanson and Schwartz & Son,[3] and loss of consortium as to Lewis's husband. Two additional counts alleged other claims against Hanson and Schwartz & Son. Count II claimed intentional infliction of emotional distress based on allegations that Hanson, after the accident, deliberately and maliciously prevented Lewis's grandchildren from visiting their severely injured grandmother, caused his wife and children to cut off all contact with Lewis, failed to apologize to her, and began to ridicule her to others. Count III claimed invasion of privacy alleging that Schwartz & Son, through Hanson, wrongly obtained and disseminated private medical information belonging to Lewis. (Defs.' Resp. Ex. A.) On May 4, 2011, after a motion for summary judgment was filed, the Lewises voluntarily dismissed their complaint without prejudice. (*Id.* Ex. B & C.) Shortly thereafter, a settlement occurred. Lewis settled her claims for $500,000, but, according to Lewis, the settlement related only to Hanson's post-accident conduct. (Answer ¶ 9, Lewis Aff. ¶ 6.) Lashgari states that he disbursed to Lewis an unspecified amount from the settlement fund on June 15, 2011. (Presumably, he paid himself an attorney's fee first). Central States filed the present lawsuit on July 19, 2011.

---

[3] Schwartz & Son was accused of negligent entrustment of the vehicle; negligent hiring, training, supervision and retention of Hanson; and respondeat superior liability for Hanson's negligence.

**LEGAL STANDARD**

A party seeking a preliminary injunction must demonstrate that (1) its claim has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) absent injunctive relief, it will suffer irreparable harm in the period prior to final resolution of its claim. *Girl Scouts of Manitou Council* v. *Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party satisfies these threshold requirements, the court must balance the threatened injury to the moving party with the threatened harm the injunction may inflict on the nonmovant. *Id.* The court also must consider the public interest in either the grant or denial of the injunctive relief. *Id.* In applying these criteria, the court uses a "sliding scale" approach: if a claim is very likely to succeed on the merits, less harm to the plaintiff will be required to justify injunctive relief and vice versa. *Abbott Labs*. v. *Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

**ANALYSIS**

**I.      Whether Central States is Seeking "Equitable Relief" under § 502(a)(3)**

ERISA § 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The parties do not dispute that Central States, through one of its trustees, is authorized to bring the present action. Section 502(a)(3)(B) of ERISA, however, allows only equitable relief, and to succeed on the merits of its claims Central States must show that the relief it seeks is equitable. If it is not, the case does not arise under federal law and the court lacks subject matter

4

jurisdiction to consider Central States's claims. *See Varco* v. *Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan*, 338 F.3d 680, 686–688 (7th Cir. 2003).

In *Great-West Life Annuity Insurance Company* v. *Knudson*, the United States Supreme Court held that § 502(a)(3) does not authorize a legal claim against a plan beneficiary where the settlement fund had already been distributed to a Special Needs Trust and were not in the possession of the beneficiary. 534 U.S. 204, 214, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002). The Court distinguished between restitution at law and restitution at equity and concluded that equitable relief under § 502(a)(3) was unavailable because Great-West was not claiming "particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for the benefits that they conferred." *Id.* at 214. Relief was therefore unavailable to Great-West under § 502(a)(3). *Id.* at 220.

In *Sereboff* v. *Mid Atlantic Medical Services, Inc.*, the Supreme Court clarified *Knudson,* holding that where an ERISA plan creates an "equitable lien by agreement" a plan fiduciary may seek equitable relief under § 502(a)(3). 547 U.S. 356, 364–65, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006). The plan in *Sereboff* included an "Act of Third Parties" provision, which required beneficiaries to reimburse the plan from "[a]ll recoveries from a third party (whether by lawsuit, settlement or otherwise)," and applied when a beneficiary received benefits due to an illness or injury resulting from "the act or omission of another person or party." *Id.* at 359. The Sereboffs were involved in an automobile accident and subsequently settled their claims against several third parties. Mid Atlantic filed a § 502(a)(3) action seeking to recover medical expenses incurred by the plan on the Sereboffs' behalf from the settlement fund. *Id.* at 360. The Sereboffs' lawyer had already distributed the settlement proceeds before Mid Atlantic filed suit,

5

but the parties agreed to preserve a portion of the fund in an investment account pending the resolution of the lawsuit. The Court concluded that Mid Atlantic could proceed with its § 502(a)(3) claim, noting that "the impediment to characterizing the relief in *Knudson* as equitable [was] not present here" because the fund sought by Mid Atlantic was "specifically identifiable" and "within the possession and control of the Sereboffs." *Id.* at 363. The Court affirmed that Mid Atlantic properly sought "equitable relief" under § 502(a)(3). *Id.* at 369.

Relying on the Court's holding in *Sereboff*, the Seventh Circuit in *Gutta* v. *Standard Select Trust Insurance Plans* affirmed summary judgment in favor of a plan which sought restitution under § 502(a)(3) where the beneficiary had already dissipated and commingled the disputed funds. 530 F.3d 614, 621 (7th Cir. 2008). Standard Select sought to recover long-term disability benefits erroneously paid to Gutta over the course of three years. *Id.* at 616–17. Gutta argued that because it was impossible to trace the benefits paid to him by Standard Select, equitable relief was unavailable under § 502(a)(3). *Id.* at 620. In rejecting this argument, the court noted that, as in *Sereboff*, the plan created an equitable lien by agreement between Gutta and Standard Select, and that lien was not dependent on the ability to trace particular funds. *Id.* at 621. The court concluded that Standard Select could bring its action under § 502(a)(3) "even if the benefits it paid Gutta are not specifically traceable to Gutta's current assets because of commingling or dissipation" of the funds. *Id.*

Here, the relief Central States seeks is equitable as to Lewis. Defendants do not dispute that Lewis was a covered individual under the plan and is thus required to reimburse Central States for "the full amount of the Fund's Subrogation Rights before [she] receives any Proceeds in full or partial satisfaction of . . . her Loss Recovery Rights." (Compl. Ex. A § 11.14(d).) The

6

plan defines Loss Recovery Rights to include "all rights based upon . . . [a]ny act or omission by any person or entity" or "[a]ny policy, contract, plan or other document creating responsibility for any insurance, indemnity or reimbursement." (*Id.* § 11.14(a)(1).) Similar to the language considered in *Sereboff* and *Gutta*, these provisions are sufficient to create an equitable lien by agreement between Lewis and Central States, which is not dependent on the ability to strictly trace the settlement fund. As such, the relief sought by Central States as to Lewis is "equitable" under § 502(a)(3).

The applicability of § 502(a)(3) to Lashgari, however, is not settled in case law. As Lewis's lawyer, Lashgari was not a party to the agreement between Lewis and the plan. Under *Harris Trust & Savings Bank* v. *Salomon Smith Barney Inc.*, 530 U.S. 238, 249–50, 120 S. Ct. 2180, 147 L. Ed. 2d 187 (2000), however, a plan may seek equitable relief against a non-fiduciary party in interest for engaging in a prohibited transaction under § 406(a), even though this section, by its terms, only expressly applies to fiduciaries. In so holding, the Court considered the statutory construction of ERISA and noted that "§ 502(a)(3) makes no mention at all of which parties may be proper defendants–the focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I].'" *Id.* at 246 (quoting 29 U.S.C. § 1132(a)(3)). The Court concluded that liability under § 502(a)(3) does not hinge on whether a particular defendant labors under a duty expressly imposed by the substantive provisions of ERISA. *Id.* at 249.[4]

---

[4] This decision may impact the Seventh Circuit's holding in *Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund* v. *State Farm Mutual Automobile Insurance Company*, 17 F.3d 1081, 1084 (7th Cir. 1994), where the court ruled that an insurer was not bound to recognize a plan's subrogation rights as part of a settlement on behalf of its insured because it was not a party to the plan. *Harris Trust* suggests that a non-party such as State Farm may be held liable under § 502(a)(3) if it engages in an act or practice that violates ERISA.

Other courts have relied on the Supreme Court's reasoning in *Harris Trust* to conclude that a plan may maintain a § 502(a)(3) action against an attorney who holds a settlement fund belonging to the plan. For example, in *Longaberger Company* v. *Kolt*, the Sixth Circuit held that a plan sought appropriate equitable relief within the meaning of § 502(a)(3)(B) when it sought to recover plan funds from a beneficiary's attorney who was neither a fiduciary nor a beneficiary of the plan. 586 F.3d 459, 468 (6th Cir. 2009). In *Longaberger*, the defendant attorney secured two settlements on behalf of a plan beneficiary after her son was involved in an automobile accident. *Id.* at 462. The attorney disbursed the settlement fund and retained a portion of the money to satisfy his fee. The plan sought to recover medical expenses it had incurred on behalf of the son through the use of a constructive trust and reimbursement lien on the settlement fund held by the attorney. *Id.* at 463–464. Relying on *Harris Trust*, the Sixth Circuit held that "there is no statutory barrier that prevents [the attorney] from being a defendant in a suit brought pursuant to § 502(a)(3) of ERISA, provided that the relief sought lies in equity." *Id.* at 468. In concluding that the relief sought by the plan was indeed equitable, the court explained that the plan

> properly identified a specific fund (i.e., that portion of the settlement funds equaling the amount [the plan] paid to cover [the son's] medical expenses) that was in the possession and legal control of [the attorney], but belonged in good conscience to the Plan. The fact that [the attorney] chose to disregard [the plan's] first priority lien and commingle the settlement funds does not defeat [the plan's] claim for equitable relief, because under *Sereboff*, [the plan] was free to follow a portion of the settlement funds into [the attorney's] hands.

*Id.* at 469. Thus, the court concluded, "the Plan sought and was awarded 'appropriate equitable relief'" within the meaning of § 502(a)(3). *Id.*; *see also Comm. for Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan* v. *Horton*, 513 F.3d 1223, 1229 (11th Cir. 2008) (holding that a

8

plan could use § 502(a)(3) to recover settlement proceeds in the possession of a third party, stating that "the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact"); *Bombardier Aerospace Empl. Welfare Benefits Plan* v. *Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 350 (5th Cir. 2003) (stating that "the Supreme Court's reasoning in *Harris Trust* influences us to conclude today that § 502(a)(3) authorizes a cause of action against a non-fiduciary, non-'party in interest' attorney-at-law when he holds disputed settlement funds on behalf of a plan-participant client who is a traditional ERISA party"); *Anderson* v. *Dergance*, No. 08 C 2522, 2009 WL 1702820, at *3 (N.D. Ill. June 18, 2009) (granting equitable relief to a plaintiff plan against a beneficiary and his attorney where attorney held a portion of beneficiary's settlement fund in a trust account); *but see Crawford & Co. Med. Benefit Trust* v. *Repp*, No. 11 C 50155, 2012 WL 716921, at *3–4 (N.D. Ill. Mar. 6, 2012) (dismissing § 502(a)(3) claim against lawyer where plaintiff failed to plausibly state that lawyer was in possession of identifiable, non-dissipated funds that were still in his control).

The reasoning of *Longaberger* is persuasive. Moreover, *Gutta*, decided in the light of *Harris Trust*, ruled that relief was equitable even if the benefits the plan paid to the covered individual were not specifically traceable to that individual's current assets because of commingling or dissipation of the fund. Thus, the funds belonging to the covered individual could be traced into the attorney's hands. Indeed, Lashgari had control of Lewis's money and chose to pay himself and not to pay Central States. Although payments he may have made to others (such as for costs and expenses related to preparing the case) are beyond the reach of equity under *Knudson*, the portion of the settlement fund that he, acting on behalf of Lewis, paid himself is not, even if one assumes that the amount Lashgari received has been commingled, a

9

fact yet undetermined. The remedy is equitable "because it is indistinguishable from an action to enforce an equitable lien established by agreement[.]" *Sereboff*, 547 U.S. at 368.

Although the Seventh Circuit has yet to decide whether, in light of *Harris Trust*, § 502(a)(3) allows a plan to recover funds from a beneficiary's attorney, *Gutta* implies that it would agree with its sister circuits.[5] For these reasons, this court concludes that the relief sought by Central States as to Lashgari is equitable under § 502(a)(3).[6]

## II.     Likelihood of Success on the Merits

To prevail on its motion for injunctive relief, Central States must show some likelihood of success on the merits. This is a low threshold, requiring only that Central States's chance of prevailing is "better than negligible." *Meridian Mut. Ins. Co.* v. *Meridian Ins. Grp.*, 128 F.3d 1111, 1114 (7th Cir. 1997) (citations omitted). Central States argues that it is likely to succeed on the merits of its claims because the plan vests it with subrogation and reimbursement rights to all present and future rights of recovery that a covered individual, like Lewis, and her attorney may have. (Compl. Ex. A § 11.14(a).) As such, argues Central States, it is entitled to full reimbursement for the medical expenses it incurred on Lewis's behalf from the settlement she received in her Georgia lawsuit. (*Id.* § 11.14(d).)

---

[5] *Crawford & Company Medical Benefit Trust* v. *Repp*, No. 11 C 50155, 2012 WL 716921 (N.D. Ill. March 6, 2012), reached the conclusion that, *Gutta* notwithstanding, *Varco* requires a plan to plead and prove the following when it brings a claim against a party other than a plan participant: "(1) that the funds in that person's possession are identifiable, (2) not dissipated, and (3) in some manner still in the control of the plan participant." *Id.* at *3. This court believes that Lashgari's identity as Lewis's lawyer at the time he received the settlement fund and his exercise of control over the fund places him, as well as Lewis, in the position of a trustee.

[6]     Jurisdiction is therefore proper under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. §§ 1132(a)(3) & (e)(1) (ERISA). Venue is proper under 29 U.S.C. § 1132(e)(2) because this is an action brought under Title I of ERISA in the district court where the plan is administered, Rosemont, Illinois.

Defendants counter that Central States's § 502(a)(3) claims must fail because (1) there was no liability proven for the car accident on October 8, 2008; (2) the funds received by defendants were for the post-accident tortious conduct of Hanson; and (3) the settlement fund was disbursed on June 15, 2011. The first argument is unverified and may be disregarded by the court as such. *See* 11A Charles Alan Wright et al., *Federal Practice and Procedure Civil* § 2949 (2d ed.) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction."); *Eyler* v. *Babcox*, 582 F. Supp. 981, 986 (N.D. Ill. 1983) (declining to issue a preliminary injunction where the plaintiff's allegations were "neither contained in a verified pleading nor supported by affidavit."). Defendants have not attached a copy of the settlement, nor have they submitted any documents verifying the terms of the agreement. The scope of the Georgia defendants' liability, if any, is unclear from the record.

In support of their second argument, defendants rely solely on the affidavit of Lewis, who states that she settled her claims against Hanson for his post-accident conduct for $500,000. (Lewis Aff. ¶ 6.) It is undisputed that a substantial settlement occurred shortly after defendants voluntarily dismissed the Georgia lawsuit, which was pending for several years. Lewis's implication, however, that the Georgia defendants (or their insurance carriers) agreed to pay anything, much less $500,000, to compensate her for Hanson's conduct in refusing to let his wife and children see her during her recovery period is so unlikely that it deserves no weight. Moreover, with Schwartz & Son's statement under oath in the Georgia litigation that it did not violate Lewis's right of privacy, *see* Defs.' Resp. Ex. B, Kruger Aff. ¶ 5, a statement by which defendants here would be bound, it is equally doubtful that damages would have been paid on

11

that claim, particularly where Hanson and Schwartz & Son would have had a right to access Lewis's medical records because of her claims in the Georgia lawsuit. As such, the court declines to consider Lewis's self-serving statement that the settlement fund relates only to her post-accident claims. *See generally* 43A John Bourdeau et al., *Corpus Juris Secundum Injunctions* § 329 (updated Mar. 2012) ("The acceptance or rejection of affidavits ordinarily is a matter within the sound discretion of the trial court."). Finally, *Gutta* affirmatively forecloses defendants' third argument because Central States may seek equitable relief under § 502(a)(3) regardless of whether the settlement proceeds are traceable to a specific asset. *See Gutta*, 530 F.3d at 621. The court therefore concludes that Central States has demonstrated a likelihood of success on the merits of its claims.

### III. Irreparable Harm and No Adequate Remedy at Law

Central States next must show that traditional legal remedies are inadequate, and absent injunctive relief it will suffer irreparable harm in the period prior to final resolution of its claims. Central States argues that traditional legal remedies are inadequate because it may only seek equitable relief under § 502(a)(3), and absent injunctive relief from this court, it will be foreclosed from seeking such relief. Defendants note that Central States waited more than six months after the settlement fund was disbursed before seeking relief, inferring that the harm is not irreparable or else Central States would have promptly sought such relief. The court agrees that Central States does not adequately explain the reason for its delay, but defendants cite no authority for the position that such a delay extinguishes Central States's right to injunctive relief.[7] Moreover, given that Lashgari distributed the settlement fund to Lewis (and presumably

---

[7] In fact, defendants cite no legal authority for any of the positions in their brief.

himself), the risk of irreparable harm to Central States is increased because defendants may be inclined to place the funds in the hands of others, who could not be called upon to restore the fund. As such, the court concludes that these factors favor imposing Central States's requested relief.

## IV. Balance of the Harms

Finally, the court must balance the threatened injury to Central States with the threatened harm the injunction may inflict on defendants. The court also must consider the public interest in either the grant or denial of the injunctive relief. Here, the threatened injury to Central States is great. It has paid $180,003.46 in covered medical expenses on behalf of Lewis, and has yet to recover one cent despite a $500,000 settlement payment to defendants. Central States's delay in asserting its right does not defeat the public interest in maintaining the financial soundness of the plan. Central States depends on beneficiaries such as Lewis to honor their contractual obligations in order to maintain the solvency of its benefit funds for other covered participants. It also relies on attorneys such as Lashgari to ensure that their clients fulfill obligations that arise from their participation in the plan. Defendants do not dispute that they received notice from Central States of its subrogation rights, which they have thus far refused to honor. As such, the court believes that the fair result is to grant Central States's motion for a preliminary injunction, enjoining Lewis and Lashgari from dissipating $108,033.46[8] until Central States's § 502(a)(3) rights are fully litigated or until the parties' reach a settlement agreement in this case.

---

[8] Lewis does not rebut the itemized charges submitted by Central States as payments related to the accident other than to generally assert that another (pre-existing) medical problem was the basis for a portion of the charges. (Lewis Aff. ¶¶ 4–5.) Because this rebuttal evidence is extraordinarily implausible, the court concludes that Central States has established some likelihood of success on the merits of its entire claim.

**CONCLUSION AND ORDER**

Central States's motion for preliminary injunction [# 27] is granted. Defendants are hereby directed as follows:

1. Defendants Lewis and Lashgari, jointly and severally, and all those acting in concert or participation with them, are hereby ordered to restore to the settlement fund the amount of $180,033.46, which is equal to that portion of the fund received under the terms of the settlement of any and all claims contained in the Lewises' Bibb County, Georgia complaint, Civil Action No. 73321, filed October 8, 2009;

2. The fund shall be placed in a client trust fund account maintained by Lashgari pending disposition of this litigation; and

3. Central States shall post a bond in the amount of $90,000 in the registry of this court as provided in this court's Local Rule 65.1(b).

ENTERED:

Dated: May 15, 2012

_____
JOAN HUMPHREY LEFKOW
Judge, United States District Court