# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) ) | Case No. 11 C 4845 |
| Plaintiffs, | ) ) | Judge Joan H. Lefkow |
| v. | ) ) | |
| BEVERLY LEWIS and DAVID T. LASHGARI, | ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

In 2008, defendant Beverly Lewis was injured in a car accident and the resulting medical expenses were covered by plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States"). In 2011, Lewis settled a state court tort action related to the accident and the settlement proceeds were paid to her attorney, defendant David Lashgari, who kept $298,149 and disbursed the remaining $201,851 to Lewis and her husband. Central States then brought this suit against Lewis and Lashgari for reimbursement of Lewis's medical expenses from the settlement proceeds.[1]

After a trip to the Seventh Circuit for the interlocutory appeal of a contempt order, the case is now before the court on cross-motions for summary judgment.[2] For the reasons stated

---

[1] The suit was formally brought by one of Central States' trustees, Howard McDougall, as a representative of Central States. Arthur H. Bunte, Jr. was substituted for McDougall in February 2012. (*See* dkt. 30.)

[2] The court will address the appropriate sanctions for violation of the contempt order in a future opinion.

1

below, the motion of Lewis and Lashgari (dkt. 161) is denied. Central States' motion (dkt. 148) is granted as to defendants' liability as discussed herein but is denied with respect to the amount of Central States' recovery.[3]

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). When considering cross-motions for summary judgment, the court must be careful to draw reasonable inferences in the correct direction. *See, e.g., Int'l Bhd. of Elec. Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324;

---

[3] Jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. §§1132(a)(3) & (e)(1). Venue is proper under 29 U.S.C. § 1132(e)(2) because this is an action brought under Title I of the Employment Retirement Income Security Act ("ERISA") in the district court where the plan is administered.

*Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

## BACKGROUND FACTS

**I.    Central States Plan and Covered Medical Expenses**

As a teamster, Lewis's husband and his dependents were covered by the Central States' health and welfare plan regulated by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1) ("the Plan"). The Plan provides that if Central States pays a beneficiary's medical expenses for an accident-related injury, Central States is immediately subrogated to the beneficiary's rights of recovery from third parties arising out of the accident. (*See* dkt. 166-2, ex. D-2 ("Plan") § 11.14.)[4] The Plan further provides that Central States' payment of accident-related medical expenses shall "result in an immediate assignment to [Central States] of all right, title and interest of the Covered Individual to and in any and all of his [recovery rights] to the extent of such payments" and clarifies that Central States is "entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any settlement proceeds[.]" (*Id.* §§ 11.14(c)-(d).) The Plan allows Central States to assert a lien on the beneficiary's recoveries from third parties. (*See id.* § 11.14(f).)

Lewis was injured in an automobile accident on October 8, 2008 and Central States paid her resulting medical expenses. Beginning in December 2008, Central States advised Lewis and her attorney, Lashgari, that it had a lien in the amount of Lewis's covered medical expenses on any accident-related recoveries from third parties. Central States submits that, from the date of

---

[4] Defendants state that Central States improperly relies on the January 1, 2013 version of the Plan and submit a September 30, 2007 version, but they do not discuss the significance of any amendments between 2007 and 2013. In any event, in an abundance of caution the court will refer to the 2007 version.

3

the accident through April 5, 2011, it paid $180,003.46 in accident-related medical expenses for Lewis. Lewis disputes that all of the expenses related to the accident.

## II.     State Court Tort Action and Settlement Proceeds

In October 2009, Lewis, through her attorney Lashgari, filed a tort suit in Georgia state court against the driver of the car at the time of the accident and his employer. In 2011, Lewis settled the suit for $500,000 and the defendants' insurer wrote a check for that amount to the order of Beverly Lewis, Michael Lewis, and Lashgari's firm, Lashgari & Associates, Attorneys at Law, P.C. (Dkt. 84 at 2.) On June 8, 2011, Lashgari deposited the settlement funds in a trust account in the name of Lashgari & Associates. A week later Lashgari dispersed $201,851 to Lewis and her husband. He transferred the remaining $298,149 to Lashgari & Associates' operating account. Neither Lewis nor Lashgari paid any amount to Central States to satisfy its lien.

Lewis states that she dissipated the settlement proceeds by purchasing a vehicle and a house and paying for other living expenses. (*See* dkt. 113, ex. 2 ¶¶ 4-6.) Lashgari states that the funds deposited into his law firm's operating account were used to pay accounts payable, operating expenses, and for renovation and replacement of corporate equipment. (*See* dkt. 66 ¶¶ 30, 32.) The amounts personally received by Lashgari as compensation were used to pay personal obligations and expenses. (*See id.* ¶ 33.)

## III.    Federal Court Action

In July 2011, Central States commenced this action to enforce its lien under ERISA. In February 2012, Central States moved for a preliminary injunction to prevent Lewis and Lashgari from disposing of the settlement proceeds.[5] (Dkt. 27.) The court granted the injunction and also

---

[5] Lewis and Lashgari profess that they had dissipated all settlement funds by the time Central States moved for the preliminary injunction.

ordered Lewis and Lashgari to return at least $180,000 to Lashgari's client trust fund account pending final judgment in this case. (Dkt. 42.) Lewis and Lashgari did not comply with the court's order and the court found them in contempt on May 3, 2013. (Dkt. 119.) The contempt order required that Lewis and Lashgari produce financial records no later than May 23, 2013, that Lashgari appear in-person at a hearing on May 30, 2013, and that Lashgari provide the order of contempt to the Georgia State Bar and notify it that Lashgari's conduct in this matter should be investigated. (*Id.*) Lashgari appealed the contempt order, and the Seventh Circuit affirmed the order earlier this year. *See Central States, Se. & Sw. Areas Health & Welfare Fund* v. *Lewis*, 745 F.3d 283 (7th Cir. 2014).

## ANALYSIS

The court will first address whether the relief sought by Central States is appropriate under ERISA. It will then discuss whether Central States has adequately supported its case on summary judgment and whether any of the defenses asserted by Lewis and Lashgari prevent the imposition of liability.

**I.     Appropriate Equitable Relief**

"A fiduciary may bring a civil action under § 502(a)(3) of ERISA '(A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.'" *Sereboff* v. *Mid Atl. Med. Servs.*, 547 U.S. 356, 369, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006) (citing 29 U.S.C. § 1132(a)(3)). There is no dispute that Central States is a fiduciary under ERISA and that it seeks to enforce the reimbursement

provision of its Plan. The question is whether Central States seeks "appropriate equitable relief" against Lewis and Lashgari.[6]

"Appropriate equitable relief" under § 502(a)(3) is the kind of relief "typically available in equity in the days of the divided bench, before law and equity merged." *US Airways, Inc.* v. *McCutchen*, 569 U.S. ---, 133 S. Ct. 1537, 1544-45, 185 L. Ed. 2d 654 (2013) (quoting *Mertens* v. *Hewitt Assocs.*, 508 U.S. 248, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)) (internal quotation marks omitted). Although critics have called the distinction between law and equity anachronistic and recondite, the Supreme Court has provided some guidance for lower courts attempting this inquiry.

In *Great-West Life & Annuity Insurance Company* v. *Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002), after a beneficiary settled a state tort action relating to injuries suffered in a car accident, the plaintiff insurer sought restitution under § 502(a)(3) for accident-related medical costs. *Id.* at 207. In determining whether the plaintiff sought appropriate equitable relief, the Court examined both the basis for the plaintiff's claim and the nature of the underlying remedies sought. *Id.* at 213. The Court concluded that "a plaintiff could seek restitution *in equity* . . . where the money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (citations omitted). But the defendants in *Great-West* did not have possession of the settlement proceeds (they had been used to fund a special needs trust and to cover attorneys' fees and other debts). The Court thus held that the plaintiff's claim could not

---

[6] Aside from the "appropriate equitable relief" restriction, there is no statutory limit to the universe of potential defendants under § 502(a)(3). *See Harris Trust & Sav. Bank* v. *Salomon Smith Barney, Inc.*, 530 U.S. 238, 246, 120 S. Ct. 2180, 147 L. Ed. 2d 187 (2000).

proceed under § 502(a)(3) because it sounded in law rather than equity and sought the "imposition of personal liability" for the medical benefits. *Id.*

Four years later, the Supreme Court was presented with similar facts in *Sereboff* v. *Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006). After the Sereboffs settled their state tort action, they failed to reimburse their health insurance plan for the covered medical expenses, despite the plan's asserted lien on the settlement proceeds. *Id.* at 360. The plan sued the Sereboffs for reimbursement and the district court entered an injunction requiring them to put a portion of the settlement proceeds in an investment account during the pendency of the litigation. *Id.* To determine whether the plan sought appropriate equitable relief under § 502(a)(3), the Supreme Court again looked to the basis asserted for the plan's recovery and the nature of the recovery. *Id.* at 363. First, the Court found that nature of recovery was equitable because the plaintiff sought specifically identifiable funds within the Sereboffs' possession and control. *Id.* Second, the Court characterized the plaintiff's claim as one for an "equitable lien by agreement" and held that the strict tracing of funds required for recovery on an equitable restitution claim is not necessary for recovery on the basis of equitable lien by agreement. *Id.* at 363-67. The Court allowed the plaintiff to recover from the funds set aside by the Sereboffs. *Id.* at 369.

Most recently, in *US Airways, Inc.* v. *McCutchen*, 569 U.S. ---, 133 S. Ct. 1537, 1544-45, 185 L. Ed. 2d 654 (2013), the Supreme Court affirmed the theory of equitable lien by agreement. Analogizing to *Sereboff*, the Court held that "[t]he nature of the recovery requested was equitable because [plaintiff] claimed specifically identifiable funds within [defendants'] control . . . [a]nd the basis for the claim was equitable too, because [plaintiff] relied on the familiar rule of equity that a contract to convey a specific object not yet acquired creates a lien on that object as soon as

7

the contractor gets a title to the thing." *Id.* at 1545 (internal quotation marks, alterations, and citations omitted).

The Seventh Circuit also has weighed in on the distinction between legal and equitable relief under § 502(a)(3). In *Gutta* v. *Standard Select Trust Insurance Plans*, 530 F.3d 614 (7th Cir. 2008), the defendant insurer counterclaimed under § 502(a)(3) for reimbursement of amounts paid to a beneficiary that should have been offset by benefits that the beneficiary received from other sources. *Id.* at 616-17. The beneficiary argued that the counterclaim did not seek appropriate equitable relief because he had commingled and dissipated the benefits and there were no longer specifically identifiable funds in his possession from which the claim could be satisfied. *Id.* at 620. The Seventh Circuit rejected the beneficiary's argument, finding that, as in *Sereboff*, the basis of the insurer's claim was an equitable lien by agreement and such a "lien is not dependent on the ability to trace particular funds."[7] *Id.* at 621. The Seventh Circuit concluded that the insurer's counterclaim properly requested equitable relief under § 502(a)(3) "even if the benefits it paid [to the beneficiary] are not specifically traceable to [the beneficiary]'s current assets because of commingling or dissipation." *Id.*

As in *Sereboff, McCutchen*, and *Gutta*, Central States asserts an equitable lien by agreement on the settlement funds received by Lewis and Lashgari. The Plan is an agreement between Central States and the covered individuals. As a covered individual, Lewis was obligated to abide by the Plan's reimbursement terms and immediately reimburse Central States after her recovery in the state court action. *See, e.g., Trs. of Central States, Se. & Sw. Areas*

---

[7] Unlike *Great-West*, *Sereboff*, and *McCutchen*, *Gutta* focuses only on the basis of the claim, equitable lien by agreement. *See Gutta*, 530 F.3d at 620-21. It does not address whether the nature of the recovery also sounds in equity. Although the Supreme Court precedent could be read to require a specifically identified fund in order for the nature of the recovery against a beneficiary to be equitable, *see Bilyeu* v. *Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1094-95 (9th Cir. 2012), this court is bound by the Seventh Circuit's interpretation.

8

*Health & Welfare Fund* v. *State Farm Mut. Auto. Ins. Co.*, 17 F.3d 1081, 1083-84 (7th Cir. 1994) (covered individuals have contractual obligation to abide by plan's terms). Lewis failed to do so and a lien in the amount of the accident-related medical expenses was created on the settlement proceeds as soon they were received by Lewis (through her agent, Lashgari). *See McCutchen*, 133 S. Ct. at 1545; *see also AirTran Airlines, Inc.* v. *Elem*, --- F.3d ----, 2014 WL 4694776, at **5-6 (11th Cir. Sept. 23, 2014) (beneficiary "likely had 'actual possession' because her attorney, as her agent, received and deposited the checks"). And under *Gutta*, Central States' claim seeks appropriate equitable relief under § 502(a)(3) whether or not the settlement proceeds were subsequently commingled or dissipated. *See Gutta*, 530 F.3d at 621; *see also Thurber* v. *Aetna Life Ins. Co.*, 712 F.3d 654, 664-65 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2723 (2014) ("[W]hether or not the beneficiary remains in possession of those particular dollars is not relevant as long as she was on notice that the funds under her control belonged to the insurer; she held the money in a constructive trust.").

Lashgari argues that Central States cannot maintain a claim based on "equitable lien by agreement" against him because he is not a party to the Plan. But as described in *Sereboff*, "a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Sereboff*, 547 U.S. at 363-64. The equitable lien by agreement was created as soon as the settlement proceeds were received by Lashgari (as Lewis's agent). Lewis then breached her fiduciary duty as trustee and transferred a portion of the settlement proceeds to her attorney.[8] Because Lashgari was aware of the lien, he took his portion of the settlement proceeds subject to the lien created by agreement. *See Elem*, 2014 WL 4694776, at **4-5.

---

[8] For his part, Lashgari also was ethically bound not to dissipate the settlement funds. *See* Ga. Rule of Prof'l Conduct, Rule 1.15(I) (2011).

9

This is consistent with the holding of the Sixth Circuit in *Longaberger* v. *Kolt*, 586 F.3d 459 (6th Cir. 2009), which was cited favorably by the Seventh Circuit in the appeal of the contempt order in this case. *See Lewis*, 745 F.3d 285. In *Longaberger*, a self-funded ERISA-regulated benefits plan sued a beneficiary and his attorney, Kolt, after they failed to honor the plan's lien on settlement proceeds from a state tort action. Kolt argued on summary judgment that "[b]ecause of Longaberger's delay and inaction, there is no longer any specifically identifiable fund in Kolt's possession on which Longaberger's lien can be imposed." *Id.* at 466. The court, however, found that a specifically identifiable fund was not necessary because the plan based its claim on the theory of equitable lien by agreement. *Id.* To the attorney's argument that he was not bound by the plan, the Sixth Circuit responded, "The fact that Kolt chose to disregard Longaberger's first priority lien and commingle the settlement funds does not defeat Longaberger's claim for equitable relief, because under *Sereboff*, Longaberger was free to follow a portion of the settlement funds into Kolt's hands." *Id.* at 469.

Although some courts have questioned *Longaberger*'s conclusion, *see, e.g., Crawford & Co. Med. Benefit Trust* v. *Repp*, No. 11 C 50155, 2012 WL 716921, at **3-4 (N.D. Ill. Mar. 6, 2012); *T.A. Loving Co.* v. *Denton*, 723 F. Supp. 2d 837, 842-43 (E.D.N.C. 2010), the court is persuaded by the reasoning of the Eleventh Circuit in *Elem*:

> [The beneficiary's attorneys] knew that they took fees and costs subject to the lien held by AirTran, and they cannot now avoid liability by asserting that they did not agree to the terms of the plan. The lien arose before they entered into a contingency fee arrangement with [the beneficiary] . . . . These obligations . . . 'precluded [the beneficiary] from contracting away to the law firm that which she did not own herself, namely, the right to all or any portion of the sum that rightfully belonged to the Plan[.]' That [the attorneys] disregarded the first priority lien of AirTran and commingled the settlement funds does not defeat the claim for equitable relief by AirTran because 'under *Sereboff*, AirTran was free to follow a portion of the settlement funds into [the attorneys'] hands.'

2014 WL 4694776, at *6 (quoting *Bombardier Aerospace Emp. Welfare Benefits Plan* v. *Ferrier, Poirot & Wansbrough*, 354 F.3d 348, 357 (5th Cir. 2003), *abrogated on other grounds*, *ACS Recovery Serv., Inc.* v. *Griffin*, 723 F.3d 518 (5th Cir. 2013); *Longaberger*, 586 F.3d at 469) (brackets in original omitted). Thus the court finds that Central States seeks appropriate equitable relief against both Lewis and Lashgari[9] in accordance with § 502(a)(3) of ERISA.[10]

## II. Central States' Motion for Summary Judgment

Having determined that Central States seeks appropriate equitable relief against both Lewis and Lashgari, the court must consider whether it is entitled to summary judgment. In order to succeed on summary judgment, Central States must show that there is no genuine dispute of fact that (1) Lewis recovered amounts from a third party with respect to her injuries in the 2008 car accident and (2) Central States paid for medical expenses related to those injuries.

### A. State Court Action Settlement

First, Central States must show that the settlement of the state tort action was intended to cover claims arising out of the 2008 accident. (*See* Plan, § 11.14(a) (limiting subrogation rights to rights of recovery arising out of the injury).) The court addressed this issue in its opinion on the preliminary injunction in this case, finding that there was no doubt the settlement was meant to compensate Lewis for injuries arising out of the accident. (*See* dkt. 43 at 11 (defendants'

---

[9] Lashgari further argues that he cannot be personally liable in this suit because he is shielded by Lashgari & Associates' corporate veil. (The settlement check was written to the law firm and the proceeds were initially deposited in law firm accounts.) The court need not spill much ink on this argument for the reasons discussed above. Lashgari, albeit using his law firm's accounts, took possession of the funds knowing that they were subject to Central States' lien. He cannot avoid the lien by hiding behind the corporate veil.

[10] Central States argues for the first time in its opposition to defendants' motion for summary judgment that Lashgari may be held liable to Central States under the equitable remedy of surcharge, citing *CIGNA Corp.* v. *Amara*, --- U.S. ---, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011). But Central States does not cite to any cases in which surcharge is applied against a plan beneficiary rather than the trustees of the plan. Because Central States' surcharge argument was both untimely and underdeveloped, the court will not address it.

11

argument that the settling parties agreed to pay $500,000 to compensate her for post-accident conduct "is so unlikely that it deserves no weight").) Defendants have introduced no new evidence that supports a different finding. As the Seventh Circuit observed, "the settlement agreement states that it 'encompass[es] all claims and demands whatsoever that were or could have been asserted [in the Georgia personal injury lawsuit]. Even the check that Lashgari wrote to Lewis for her share of the proceeds says it's 'for settlement of all 10/08/08 claims'—and October 8, 2008 was the date of the accident." *Lewis*, 745 F.3d at 285. No reasonable jury could find that the settlement did not encompass claims related to the injuries that Lewis sustained in the 2008 accident.

### B. Central States' Payments

Central States also must show that the medical expenses it seeks to recover were related to the injuries Lewis sustained in the accident. (*See* Plan §§ 11.14(a), (c), (d).) Although Lewis and Lashgari cannot dispute that Central States made some payments for accident-related treatment, they dispute the amount of the payments.

Central States asserts that it paid accident-related medical expenses of $180,003.46. (Dkt. 150 ¶¶ 9-10.) Although it is never explicitly stated, this appears to be the total amount paid by Central States for Lewis's care between the date of the accident and April 5, 2011. In support of its assertion, Central States offers the affidavit of Albert E. Nelson, an administrator of medical benefits for Central States. (*See* dkt. 150, ex. A.) Nelson states that, "The Fund paid Beverly Lewis' covered medical expenses in the current unreimbursed amount of $180,003.46." (*Id.* ¶ 13.) Attached to the Nelson Affidavit is a document titled "Beverly Lewis: 10/08/08 Accident-Related Benefits Paid by the Central States Health & Welfare Fund." (*See* dkt. 151.) The document lists the date of service, service provider, amount charged, and amount paid by

12

Central States. (*See id.*) Central States also provides an affidavit from its medical consultant, Dr. Conrad Tasche. (*See* dkt. 175 ¶¶ 9-10; *id.*, ex. B.) Dr. Tasche reviewed the documents produced by defendants regarding Lewis's medical treatment and the diagnostic codes assigned to each claim received from Lewis between October 8, 2008 and April 5, 2011 and concluded that "the accident aggravated Lewis's pre-existing conditions, which necessitated additional medical attention as a result of the accident." (*Id.* ¶ 10.)

Defendants dispute that the entire $180,000 claimed by Central States is attributable to injuries sustained in the car accident, arguing that the figure includes treatment of Lewis's pre-existing conditions. In support, defendants submit the affidavit of Beverly Lewis stating that a significant amount of the $180,000 claimed by Central States is attributable to treatment unrelated to her car accident injuries. (*See* dkt. 165 ("Lewis Aff.") ¶¶ 4, 24, 25.) Attached to the Lewis Affidavit are over 100 pages of medical records. Defendants also submit affidavits from Lewis's doctor, Dr. Miguel Jimenez, and a physical therapist, Alex Ghaffari, who reviewed Lewis's medical records, bills, and prescriptions from February 1999 through May 2010. (*See* dkts. 211 ("Jimenez Aff."); 171 ("Ghaffari Aff.").) Dr. Jimenez states that "[a] significant percentage of [his] treatment of Mrs. Lewis subsequent to her car accident of October 8, 2008 dealt with providing continued care and treatment for her pre-existing medical conditions and problems and unrelated [*sic*] to the injuries she sustained as a result of her car accident." (Jimenez Aff. ¶ 15.) Ghaffari also concludes that a significant portion of Lewis's post-accident treatment did not relate to the injuries she sustained in the accident, but instead related to conditions that existed before the accident. (Ghaffari Aff. ¶ 48.) Ghaffari attaches 188 pages of medical records to his affidavit.[11]

---

[11] Central States moves to strike 82 pages of the medical records attached to the Lewis Affidavit and the Ghaffari Affidavit because they were not produced in discovery. (*See* dkt. 176 at 2.) Defendants

13

Although it is undisputed that Central States paid some amount with respect to Lewis's accident-related medical expenses and thus summary judgment can be granted for Central States on liability, the evidence detailed above shows there is a material dispute of fact regarding the amount of medical expenses paid by Central States that relate to the injuries that Lewis sustained in the 2008 car accident. No depositions have been taken on the issue, and the documents in front of the court indicate that the case is not yet ready for judgment on this issue. Thus the court will deny summary judgment for Central States with respect to the amount of accident-related expenses and will direct the parties to exchange documents and take any necessary depositions on the issue. After doing so, the parties are directed to discuss settling on an appropriate amount of medical expenses related to the accident. If the parties cannot reach settlement, the court will hold an evidentiary hearing on the issue on November 19, 2014.

### III. Defendants' Opposition and Motion for Summary Judgment

Defendants' filings assert various arguments against liability. Several have already been discussed and disposed of, and the two remaining arguments similarly lack merit.

#### A. Personal Jurisdiction

Lashgari incorrectly argues that the court lacks personal jurisdiction over him because he does not have the requisite minimum contacts with Illinois. ERISA provides for nationwide service of process and thus Lashgari is only required to have minimum contacts with the United States, which he undisputedly does. *See Cent. States, Se. & Sw. Areas Pension Fund* v.

---

did not respond to the motion. The vast majority of these 82 pages consist of medical entries that are unintelligible to the court, and the court will grant Central States' motion to strike with respect to these pages. Even without these documents, it appears undisputed that Lewis had conditions requiring significant medical care prior to the accident. Central States also moves to strike the declaration of Lawrence E. Heller because Heller was not disclosed as an expert witness. (*See id.* at 4.) The declaration appears twice at docket numbers 173 and 224-226. Heller's declaration is irrelevant to the issues in this suit (he simply states that he was not able to render a professional opinion about liability in the underlying state action), and the court also will grant Central States' motion with respect to the Heller declaration.

*Phencorp Reinsurance Co.*, 440 F.3d 870, 875 (7th Cir. 2006) (citing *Waeltz* v. *Delta Pilots Ret. Plan*, 301 F.3d 804, 808 n.3 (7th Cir. 2002)); *see also* 29 U.S.C. §§ 1132(e)(2), 1451(d); *McDaniel* v. *N. Am. Indem., N.V.*, No. 1:03-CV-0422, 2008 WL 1336832, at *8 (S.D. Ind. Apr. 8, 2008) ("ERISA § 502(e)(2) authorizes nationwide service of process. . . . Thus, if a defendant is personally served in any district in the United States, the district court in which the suit has been filed has personal jurisdiction over the defendant, regardless of the defendant's contacts with the forum district.") (internal quotation marks and citations omitted).

### B.  Payments to Lewis in "Violation" of the Plan

Finally, defendants argue that Central States should not be reimbursed for Lewis's medical expenses because Central States continued to pay them beyond the date that Lewis was eligible to participate in the Plan.

First, defendants contend that Lewis was not eligible to participate in the Plan after March 22, 2009 because her husband was laid off. Central States disputes whether Mr. Lewis was actually laid off in March 2009 and claims that he generally worked at least one day per week (the minimum to trigger at least some medical coverage by Central States) between March 2009 and April 2011. Further, Central States claims that it was not aware that Lewis was ineligible to receive benefits until well after the ineligibility period because Mr. Lewis's employer did not immediately report his reduced schedule or layoff.

Second, defendants contend that Lewis was not eligible to participate in the Plan after February 13, 2009 because she began to receive Medicare benefits. Central States counters that (1) Lewis never notified the plan that she was eligible for Medicare, and (2) even if Lewis were eligible for Medicare, Central States had the primary obligation to cover Lewis's medical expenses during the time that Mr. Lewis was working.

15

Unsurprisingly, defendants do not provide support for the proposition that, when a plan covers a greater amount of medical expenses than required, it loses its right to be reimbursed for those expenses in situations where reimbursement would otherwise be required. Indeed, this proposition is rather inequitable for a court sitting in equity. Lewis or her medical providers submitted claims to Central States between the date of the accident and April 2011. Although defendants now argue that Central States improperly paid Lewis's medical expenses for over two years, there is no evidence that Lewis ever notified Central States of its mistake. The disputed facts surrounding Lewis's eligibility for coverage under the Plan are immaterial to the central issue—whether, in equity, Central States is entitled to reimbursement from Lewis and Lashgari.[12]

---

[12] Further, Lewis's failure to alert Central States that it should no longer reimburse her medical expenses is tantamount to "unclean hands," which prevent her from asserting the defense that Central States should not have paid for her medical expenses in the first place.

**CONCLUSION AND ORDER**

For the reasons stated above, the court denies defendants' motion for summary judgment (dkt. 161). Central States' motion to strike (dkt. 176) is granted, and Central States' motion for summary judgment (dkt. 148) is granted as to liability against both Lewis and Lashgari in an amount to be determined. The total amount that Central States may recover shall not exceed the amount of medical expenses paid in relation to the injuries that Lewis sustained in the 2008 accident ("the Accident-Related Medical Expenses"). Central States and Lewis are ordered to exchange documents regarding the purpose of the medical treatment she received between October 8, 2008 and April 5, 2011 for which Central States requests reimbursement, and take depositions, if necessary. If there is a disagreement on the amount of Accident-Related Medical Expenses, the court will hold an evidentiary hearing on November 19, 2014 at 10 a.m. Lashgari is directed to appear at the hearing.

Date: September 30, 2014    _____
U.S. District Judge Joan H. Lefkow